GENERAL ACCIDENT FIRE & LIFE ASSURANCE CORPORATION, Ltd., Appellant,

v.

Guy E. MATTHEWS, Appellee.

No. 16072.

Court of Civil Appeals of Texas.

Fort Worth.

Oct. 23, 1959.

Rehearing Denied Nov. 27, 1959.

Orgain, Bell & Tucker and Cleve Bachman, Beaumont, for appellant.

Fred A. Carver and Ernest L. Sample, Beaumont, for appellee.

MASSEY, Chief Justice.

This is a Workmen's Compensation case. By judgment of the trial court claimant Guy E. Matthews recovered judgment of and from the appellant insurer, General Accident Fire & Life Assurance Corp., Ltd., for compensation benefits at the rate of $25 per week for a period of 32 weeks for total incapacity and further for a period of 300 weeks for permanent partial incapacity, less 46 weeks compensation theretofore paid at the aforesaid rate. The rate at which the compensation was prescribed to be payable on account of permanent partial incapacity of 85% was likewise at the same rate, in view of the relatively high weekly wage.

The insurer has appealed.

Judgment reversed and cause remanded.

From the entire record it appears undisputed, indeed stipulated, that the claimant had sustained a 30% permanent partial loss of use of his left leg below the knee on account of accidental injury to the left foot sustained in the accident giving rise to the litigation. The real issues upon the trial were whether or not the claimant had sustained injury to his back in and as the result of the same accident wherein he sustained the injury to the foot, and which back injury was occasioning general incapacity apart from that resultant on account of the loss of use of the foot, *and* whether or not the general incapacity resulting from the pain in claimant's back, experienced upon attempting to work, of such severity as to cause and occasion such general incapacity, resulted solely by reason of the undisputed loss of use of the foot or by reason of the use or attempted use of the disabled foot in the performance of duties of employment.

The minimal facts to be borne in mind in the case are as follows: (1) Claimant was working while standing upon a support which gave way and caused him to fall. (2) In landing, claimant came down first onto his left heel, shattering the "heel-bone", then onto his back. (3) While in a prone position immediately following the fall he stated in reply to inquiry that he "hurt all over". (4) While under the care of a physician and while in the hospital for a period of several months following the injury the claimant made no mention of back pain. (5) Afterward, and while still under the care of the physician and during the stay in bed at home, and a little later when ambulatory on crutches, and even on up until the time claimant attempted to do some work, no back pain, or at least no disabling back pain, was experienced. (6) Upon engaging in work after a period of approximately six or seven months claimant found that his back began to pain him each day, the pain increasing throughout the work day to such an extent that by the end of the day it was excruciating and disabling. (7) The claimant had enjoyed over ten years of work without pain in his back prior to the time of his accident, but theretofore had experienced back trouble which was undoubtedly a form of arthritis and there was residual evidence of old arthritic changes.

In the course of the cross-examination of the claimant by insurer's counsel during the progress of trial it should be stated that to the contrary of other evidence given by claimant on direct examination a part of that given by him on cross-examination included the following:

"Q. Mr. Matthews, in order to be clear on this thing, I want to ask a few more questions about your injury. You say that when you used—when you get up and use this leg, and have to walk with this stick, that is the thing that causes you the discomfort in your back, gives you the incapacity in your back, is that true? A. That's what really starts it to act. It aches right now. It is hurting today, but when I walk it hurts worse.

"Q. The thing that causes you the incapacity—as you say, the cause of your incapacity and the cause of your not being able to work, is the use of this leg? That is the cause of it?

"(By Mr. Carver: Your Honor, that calls for an opinion.)

"(By the Court: Objection overruled.)

"Q. It is the use of the leg, is that right? A. It is the use of the leg that causes my back to hurt."

In the course of the examination of the claimant's doctor, though evidence from the same witness was constructively or directly to the contrary, a part of that given on cross-examination included the following:

"A. * * * My findings on the preliminary examination summed up as follows: He has a fracture of a complicated type involving the left ankle joint, specifically the tarsal calcaneus with resulting compression of the joint and flattening of the foot. Two, demineralization of the left foot secondary to the injury. The left foot reveals severe degree of disability and this condition is permanent. No. 3, arthritis of the lumbar spine, moderately severe, including a hypertrophic spondylitis and also arthritis of the sacroiliac and sacrococcygeal joints aggravated by the injury. The late onset is due to the tilting position that the patient takes when walking with the disabled left ankle. Patient has been advised to return for further examination and treatment."

And further:

"A. Yes, sir, the posture, walking posture is determined by the gait; his walking gait has been slowed, he has to walk with a marked stiffness of his foot. He lacks the flexibility of movement in a flexing position, and the shortening and the eversion of his foot has a bearing on his back, and therefore if he carries weight or walks on stairs or stays on his feet for any amount of time, he begins to feel the pain of the spine and sacroiliac joints."

And further:

"A. The shortening of the one extremity as compared to the other would interfere with the normal gait and it would take a greater amount of use of his back than if both feet were the same size, same length, and further, that he has a deformity of his foot, not only a shortening, but a turning out. He walks like that (indicating). And walking like that continues to irritate his back."

And even before the introduction of the foregoing testimony, which was developed on cross-examination, the doctor had testified on direct examination, as follows:

"Q. Then what has happened is, this injury here, it's when he starts to use his body and use this shorter leg here, that's the thing that's causing his difficulty and brings about this pain in his back, if you want to call—assuming it's there, is that true? That is essentially true, that's the situation which we have in this case, it's the use of the leg in moving about or doing work that causes or brings about the disability, is that true? A. That is more or less true.

"Q. You would agree with me on that, is that true? A. Yes, sir."

Before mentioning the answers upon which the trial court (together with certain stipulations obviating other issues) based the judgment entered below, we believe it advisable to set out a part of the definitions given in the court's charge as follows:

"The term 'injury' or 'personal injury' as used in the Workman's Compensation Law, means damage or harm to the physical structure of the body and such diseases or infection as naturally result therefrom, *or the excitement, acceleration, or aggravation of any disease previously or subsequently existing by reason of said damage or harm to the physical structure of the body.*" (Emphasis ours.)

The part of the foregoing definition we have emphasized was approved in Southern

Underwriters v. Parker, Tex.Civ.App. Beaumont 1939, 129 S.W.2d 738, error refused. The case wherein it was approved was one in which the allegations of the injured workman and evidence supporting the same were to the effect that he had a dormant tubercular condition before breathing noxious gases and that the effect of the gas was to make the tubercular condition active. The court's holding was that it was the intention on the part of the trial court to cover this in adding the language we have emphasized to the older definition, and that under the circumstances of the case, particularly in view of the evidence, the same was not misleading and confusing and was proper.

By answers to special issues submitting the claimant's theories the jury found that he sustained an injury to his person on or about May 6, 1957, said injury including an injury to his back, the injury to his person being accidental and sustained in the course of employment and resulting in an incapacity and disability to work and earn money. Further, that for a period of 32 weeks and to December 15, 1957, the disability was total, and afterward that he had partial incapacity in the percentage of 85% for the balance of his life. Further, that the injury sustained on or about May 6, 1957, was the producing cause of the total disability found by the jury.

By answers to special issues purporting to submit the insurer's theory of affirmative defense the jury found that the injury to claimant's person, and the effects thereof, was not confined to the leg below the knee, and that the incapacity of the claimant to work and earn money because of the disability in his back was not due solely to the preexisting arthritic condition.

Prior to the submission of the charge to the jury the insurer filed a specially requested issue reading as follows:

"Special Issue No. ——

"Do you find from a preponderance of the evidence that the Plaintiff's incapacity

to work and earn money, if any, is caused solely by his use or attempted use of his injured left leg below the knee?

"Answer 'Yes' or 'No'."

The insurer also requested an instruction which would place the burden on this issue upon the claimant. The submission of the issue was refused by the trial court.

In the case of Coleman v. Hartford Accident & Indemnity Co., 1956, 297 S.W.2d 236, error refused, this court had occasion to write upon the matter of whether an injured claimant under our compensation statute is entitled to a submission of special issues presenting a theory under which he might be entitled to a judgment for general incapacity when the undisputed evidence demonstrated that such incapacity stemmed from and was wholly occasioned by reason of the use or attempted use of an injured and incapacitated specific bodily member for which compensation is provided by Section 12 of Art. 8306, Vernon's Ann.Texas St. We held that under such circumstances such a claimant was not entitled to have issues on general incapacity submitted to the jury because under the circumstances presented he would be confined to compensation as provided under the provisions of the aforesaid Section 12. In so holding reliance was primarily based upon the holding of the Supreme Court in Texas Employers' Ins. Ass'n v. Brownlee, 1953, 152 Tex. 247, 256 S.W.2d 76.

■ Under the circumstances of the instant case we believe that the insurer would have been entitled to have the compensation to which the claimant was awarded confined to that provided for under the provisions of Section 12, Art. 8306, had the specially requested issue been submitted to the jury and answered in accordance with the insurer's theory of defense and to the effect that the general incapacity, found to be existent in answers to other issues submitted, was caused solely by claimant's use or attempted use of his injured leg. This, we believe, necessarily follows

under the principles of law announced in the Brownlee and Coleman cases, supra.

In view of the evidence we have copied at an earlier stage of this opinion we have no doubt but what the issue was raised if it found support in the insurer's pleadings. Adverting to said pleadings we find the following in paragraph 3 thereof: "Further by way of answer herein, defendant would show unto the court that plaintiff's incapacity, if any, is solely the result of a specific injury and that the defendant has not sustained a general injury * * *." Further, in paragraph 5 thereof: "Further by way of answer herein, without waiving the foregoing, and in the alternative, defendant says that plaintiff's incapacity, if any, is solely the result of a specific injury to the left foot."

■ Though counsel for the injured claimant denies that the pleadings of the insurer raise the issue we are of the opinion that under applicable liberalized principles of the construction of pleadings, perforce Texas Rules of Civil Procedure, Nos. 67, 90 and 274, we should recognize that pleading is but a means to an end, not the end itself. While parties are entitled to insist upon written pleadings giving fair notice, they may waive this right. If a party can prove his claim or defense, and if his opponent does not urge in one of the proper ways that the evidence is not supported by the pleadings, a judgment predicated upon the established facts thus elicited through a full development of the controversy, under such circumstances that it is clear that both parties understood the issues before the trial court for final settlement, will be sustained regardless of defects in the form or substance of the pleading. McDonald Texas Civil Practice, p. 518, "Pleading: General", · sec. 5.18, "Waiver of Defects in Pleading". As applied to the instant controversy what Mr. McDonald has said is that if the specially requested issue under consideration had been submitted and answered favorably to the insurer a judgment entered thereon would not have been disturbed. This is

true because at no stage of the trial was such evidence objected to because of the state of the pleadings, and at no stage, according to what we find in the record, was the insurer ever apprised that the claimant might claim that the defense it was attempting to prove was beyond the scope of its pleadings. If that is all true, as we have no doubt, it would necessarily follow that the refusal of the specially requested issue presenting the defense so obviously relied on was erroneous and prejudicial in that by such refusal the insured was denied the opportunity to have the jury pass upon it. In view of such conclusion we do not reach the question of "Variance", discussed by Mr. McDonald in Sec. 5.19 of his work on Texas Civil Practice.

We believe the harm to the insurer was emphasized by reason of the language as approved in Southern Underwriters v. Parker, supra, added to the definition of "injury" or "personal injury" for this rather broad definition entitled the jury to find as it did upon the claimant's issues.

In this case a clarification of what the jury actually intended to find in its answers returned upon the claimant's issues would not be truly accomplished unless the specially requested issue was also answered by the jury.

We furthermore are of the opinion that the issue should have been submitted with the burden thereupon cast on the claimant, the fact sought to be established thereby being a rebutting fact in denial of an element of the claimant's cause of action. See Hodges on Special Issue Submission in Texas, p. 90, "Burden of Proof", sec. 32, "Burden in Inferential-Rebuttal Issues".

We are of the opinion that all the issues presenting the claimant's theory of recovery were raised and properly submitted to the jury. Other errors asserted and contended to require our order of remand we consider unnecessary to discuss in view

of our holding upon the matter of the specially requested issue.

Reversed and remanded.

## On Motion for Rehearing

■ The claimant has pointed out in his motion for rehearing that the opinion we have written in this case fails to disclose consideration of and action upon those points of error presented by the appellant insurer contending for reversal because of matters of evidence, specifically advancing propositions that as to certain issues there was insufficient evidence to support the entry of judgment upon answers returned by the jury, or that the evidence was against the great weight and preponderance of the evidence, etc. Certainly, claimant is entitled to have us pass upon such points of error in order that the Supreme Court, in the event of an ultimate reversal of our judgment, will not have occasion to remand the case to us for further consideration. We do pass upon and overrule all of said points of error presented to us by the insurer. We are of the opinion that the evidence complained of is not insufficient and is not against the great weight and preponderance of other evidence in the record.

In respect to the holding that reversible error appears because of the failure of the trial court to give the specially requested issue of the insurer, we take this occasion to list certain authorities we have followed: Lieck's Legal Trial Aid, Second Revision, p. 385, "Sole Cause from Specific Injury"; Texas General Indemnity Co. v. Scott, 1952, 152 Tex. 1, 253 S.W.2d 651; Texas Employers' Insurance Association v. Yother, Tex.Civ.App. Fort Worth 1957, 306 S.W.2d 730, writ refused n. r. e.; and Texas Employers' Insurance Association v. Hinkle, Tex.Civ.App., El Paso 1957, 308 S.W.2d 543, writ refused n. r. e.

The motion for rehearing is overruled.